**GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, an employee benefit plan, et al., Plaintiffs,**

v.

**Larry T. LITTLE, an individual, d/b/a Structural Injection & Restoration, Inc., et al., Defendants.**

No. 4:96–CV–644 CAS.

United States District Court,
E.D. Missouri,
Eastern Division.

Sept. 18, 1998.

Greg A. Campbell, Diekemper and Hammond, St. Louis, for Greater St. Louis Construction Laborers Welfare Fund, an employee benefit plan, Virgil Daly, Frederick Wolf, Robert C. Couch, Jr., Robert Flinn, Joseph Tocco, Andrew Orlando, Clement Albers, Kevin Kloster, Ron Pfleger, John L. Spencer, William Linek, Kenneth Karsten, Trustees of the Greater St. Louis Construction Laborers Welfare Fund, Construction Laborers Pension Trust of Greater St. Louis, an employee benefit plan, Larry Flinn, Robert O'Connell, James D. Henson, Frederick W. Wolf, Jo-

seph Tocco, Frank Grice, Donald Grant, Arthur Bodine, James B. Hummert, Joseph Beetz, Joseph Leritz, Michael Jerome, Trustees of the Construction Laborers Pension Trust of Greater St. Louis, AGC–Eastern Missouri Laborers Joint Training Fund, an employee benefit plan, Roger Pryor, Myrl Taylor, Richard Furniss, A.E. Gallagher, Norman Sheldon, G. Thomas Harvill, John P. Mulligan, Paul C. Schoenoebelen, Ralph V. Drury, Francis R. Wojehowski, John B. Morgan, Trustees of the AGC–Eastern Missouri Laborers Joint Training Fund, Local 42–53–110 Laborers' International Union of North America, labor organizations, plaintiffs.

John A. Walsh, Jr., Boas and Schneider, St. Louis, for Larry T. Little, an individual dba Structural Injection & Restoration, Inc., Dennis J. Holley, an individual dba Structural Injection & Restoration, Inc., Brenda Walton, an individual dba Structural Injection & Restoration, Inc., defendants.

### MEMORANDUM AND ORDER

SHAW, District Judge.

This matter is before the Court on plaintiffs' motion for default judgment under Rule 55(b), Federal Rules of Civil Procedure, and remaining defendants Larry T. Little and Brenda Walton's motion to set aside entry of default under Rule 55(c), Fed.R.Civ.P., and for other relief.[1] The motions are opposed.

### Factual and Procedural Background.

This is an action by several employee benefit plans and their trustees to collect delinquent fringe benefit contributions allegedly owed by defendants pursuant to the terms of a collective bargaining agreement. Suit is brought pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132.

The action was filed on April 4, 1996. The file reflects that defendants Little and Walton were personally served with summons and complaint by a duly-appointed special process server on April 13, 1996, and the returns of service were filed on April 16, 1996. On June 17, 1996, plaintiffs moved for an entry of default under Rule 55(a), Fed.R.Civ.P., after defendants failed to file responsive pleadings within the time permitted by Rule 12(a), Fed.R.Civ.P. Plaintiffs' attorney mailed a copy of their motion for entry of default and proposed order to the defendants by United States mail. The mailings were not returned by the postal service. (Campbell Aff., ¶ 4; Ex. A thereto.)

The Clerk of the Court entered a default against the defendants under Rule 55(a) on February 26, 1997.[2] The Clerk mailed a copy of the entry of default to the defendants. The copy mailed to defendant Little was returned by the United States Postal Service marked "addressee unknown", but the copy mailed to defendant Walton was not returned.[3]

On March 17, 1997, the Court issued an order granting plaintiffs' motion for an accounting of defendants' financial records, to ascertain what amounts might be owed by defendants. The order stated in part,

> This is an action to collect delinquent fringe benefit contributions pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, and pursuant to Section 532 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1132.
>
> Defendants were served with the summons and complaint and have not filed an answer or otherwise entered their appearances.

Order of March 17, 1997. [Doc. 14] The Clerk mailed a copy of the order to each defendant. Again, defendant Little's copy

---

1. Plaintiffs' claims against another defendant, Dennis J. Holley, were voluntarily dismissed without prejudice on February 18, 1998.

2. There is no explanation in the record why the Clerk's entry of default was not made until eight months after the motion for entry of default was filed.

3. The Clerk mailed defendant Little's copy of the entry of default to the address shown for Little on the original summons, which is different from the address shown on the return of summons, at which Little was served by the special process server.

was returned by the postal service marked "addressee unknown", but defendant Walton's copy was not returned.[4]

By letter dated March 19, 1997, plaintiffs' attorney mailed a copy of the Court's order of March 17, 1997 to the defendants and requested that defendants contact accountant Keith Schoeck to make arrangements for an audit. (Campbell Aff., ¶ 5; Ex. B. thereto.) The letters were not returned by the postal service.[5] On April 2, 1997, after receiving the letter, defendant Little contacted Mr. Schoeck by telephone and scheduled an audit for May 5, 1997. (Schoeck Aff. ¶ 4; Ex. B thereto.) The audit was cancelled as a result of Mr. Schoeck's illness. (Schoeck Aff. ¶ 5.) Attempting to reschedule the audit, Mr. Schoeck left telephone messages for defendant Little on May 5, 1997, May 13, 1997, June 17, 1997 and July 8, 1997. (*Id.* ¶ 6.)

On May 15, 1997, plaintiffs' attorney sent defendant Little a letter by United States mail, asking him to contact Mr. Schoeck to reschedule the audit. The letter was not returned by the postal service. (Campbell Aff. ¶ 8; Ex. C thereto.) On July 28, 1997, plaintiffs' attorney sent a letter to the defendants by United States mail, advising them that he would file a motion for contempt to compel them to comply with the Court's order for an accounting. The letter was not returned by the postal service. (Campbell Aff. ¶ 9.) On July 30, 1997, defendant Walton telephoned Mr. Schoeck in response to the July 28, 1997 letter, and made arrangements for the audit to occur. (Schoeck Aff. ¶ 6; Ex. B thereto.)

Following the audit, plaintiffs filed the instant motion for default judgment on January 23, 1998, seeking judgment in the total amount of $148,765.78 for delinquent fund contributions, liquidated damages, interest, attorneys' fees, accounting fees and costs. On February 23, 1998, defendants appeared through counsel and moved the Court to set aside the entry of default previously made.

### *Motion to Set Aside Default.*

Defendants Little and Walton move to set aside the entry of default on the basis that neither of them was served with summons and complaint in this action. Defendants contend the first notice they had of the pendency of this action was in early February 1998, when they received copies of plaintiffs' motion for default judgment in the mail. (*See* Little Aff. ¶ 7; Walton Aff., ¶¶ 9–10.) Defendants contend there was nothing in the other correspondence or orders they received which should have put them on notice that a complaint had been filed against them at all, much less one seeking damages.

Defendants also state they have meritorious defenses to plaintiffs' claim. Defendants assert that neither of them has personal liability to plaintiffs, as they state that the corporation Structural Injection and Restoration, Inc. lost its corporate charter in July 1992, and neither of them was personally a party to the collective bargaining agreement with plaintiffs. (Walton Aff. ¶¶ 2, 7; Little Aff. ¶¶ 2, 6.) Defendants do not dispute that the business of Structural Injection and Restoration, Inc. was carried on after it lost its corporate charter.

Defendant Walton avers that she was never an owner of the corporation or the succeeding unincorporated business out of which plaintiffs' claims arise, but was only the bookkeeper, and therefore cannot be liable to plaintiffs for doing business as Structural Injection and Restoration, Inc. (*Id.* ¶¶ 3–7; Little Aff. ¶¶ 2–5.) Defendant Walton also asserts that the audit results are inaccurate in several ways, greatly overstating the amounts which might be due. (*Id.* ¶¶ 11–15; Walton Suppl. Aff.)

Plaintiffs respond that defendants have failed to show good cause to excuse their default. Plaintiffs state that defendants' "self-serving" assertion that they were not served with summons and complaint is refuted by the record, and is simply a belated excuse for their own culpable neglect. Plain-

---

**4.** Once again, the Clerk mailed defendant Little's copy to the address for him shown on the original summons.

**5.** Mr. Campbell's letter was sent to defendant Little at the address where he was served with summons and complaint, 1022 Cobbler, Harvester, Missouri 63304.

tiffs submit the affidavit of the special process server, John Frederick, who avers that he served defendants Little and Walton personally, and recognized them because he had previously served summons and complaint on them in 1994. (Frederick Aff. ¶¶ 3–4.)

Plaintiffs also point to the fact that their attorney mailed defendants a copy of the request for entry of default and motion for default order of accounting on June 17, 1996, and contend that their attorneys' letter to the defendants dated March 19, 1997 clearly informed the defendants of the lawsuit against them. Plaintiffs note that defendant Little responded to the March 19, 1997 letter by contacting the accountant, Mr. Schoeck, for the first time. Plaintiffs assert that their attorneys' letter to the defendants dated July 28, 1997 constituted further notice of the suit, and resulted in defendant Walton contacting Mr. Schoeck.

With respect to the issue of defendants' claimed defense that they are not personally liable, plaintiffs assert that under RSMo. § 351.486(3) (1994), any officer or director who conducts business on behalf of a dissolved Missouri corporation, other than of liquidating its business, is personally liable for any obligations incurred. Defendants do not dispute that Little conducted business after the corporation was dissolved. Plaintiffs state that Walton signed numerous union contribution reports and certified payroll wage and hour reports using the title of vicepresident of Structural Injection (*see* Brooks Suppl. Aff. ¶ 2; Ex. A thereto; Ex. E to Campbell Aff.), and Walton signed at least one check for benefit contributions in May 1996 payable to the Construction Laborers on Structural Injection's corporate account. (*Id.,* ¶ 3, Ex. B thereto.) In addition, the 1990 annual registration form of Structural Injection & Restoration, Inc. filed with the Missouri Secretary of State shows that Walton was the corporation's treasurer. (*See* copy attached to Pls.' Resp. to Defs.' Mot. to Set Aside.)

Plaintiffs also assert that while the entry of default establishes liability, defendants may obtain a hearing to ascertain the exact amount of damages due. Consequently, plaintiffs contend that alleged errors in the audit do not provide justification for setting aside the entry of default. Finally, plaintiffs assert that if the entry of default is set aside, they suffer prejudice because they will be required to needlessly expend plan assets to further prosecute this action, and defendants' assets may be dissipated during litigation, which will render plaintiffs unable to collect any judgment.

■■■ An entry of default under Rule 55(a) will not automatically be set aside. The Federal Rules require that there be a showing of "good cause" to set aside an order of default. Fed.R.Civ.P. 55(c). In deciding this type of issue, courts typically look at whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused. *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 783 (8th Cir.1998). Where a party fails to make an initial showing of good cause, however, a court does not abuse its discretion by declining to consider the meritoriousness of the defense or the potential prejudice to the plaintiff. *See McMillian/McMillian, Inc. v. Monticello Ins. Co.,* 116 F.3d 319, 320 (8th Cir.1997).

Defendants' contention that they had no notice of this action until February 1998 strains credulity beyond the breaking point, given the history of this case and the contacts between plaintiffs' attorney and defendants recited above.

The Eighth Circuit has held that a signed return of service constitute prima facie evidence of valid service, "which can be overcome only by strong and convincing evidence." *Hicklin v. Edwards,* 226 F.2d 410, 414 (8th Cir.1955). Although *Hicklin* was decided before Rule 4 was amended to allow service by someone other than a United States Marshal, in light of the provision of Rule 4(c)(2)(A) for service "by any person who is not a party and is not less than 18 years of age" and the server's declaration, under penalty of perjury, that service occurred, the return of service still constitutes strong evidence of valid service. *See O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398 & n. 2 (7th Cir.1993). Some

courts have held that a defendant's counter affidavit concerning service, standing alone, is insufficient to rebut the prima facie effect of the process server's certified return of service. *See, e.g., In re Cappuccilli*, 193 B.R. 483 (Bankr.N.D.Ill.1996).

 The Court concludes that defendants' affidavits are insufficient to rebut the verified returns of service in this case, which are supplemented by the affidavit of the process server reiterating that he personally served each defendant, and stating that recognized them because he had served them before. Further, it is clear that defendants received copies of several of the Court's orders, whether from the Court or from opposing counsel, and copies of key motions filed by plaintiffs. The Court rejects defendants' contention that a layperson could not be expected to understand from such documents that a lawsuit had been filed against him or her. At the very minimum, receipt of such documents would have caused a reasonable person to make immediate inquiry.

 The Court concludes that defendants were served with summons and complaint in this action, and also received actual notice of the existence of this suit through correspondence from plaintiffs' attorney. The Court finds that defendants have failed to make any showing of good cause for their failure to appear and defend in this action, and that their conduct is blameworthy and culpable. *See McMillian*, 116 F.3d at 320. Therefore, the Court will not set aside the entry of default based on the lack of service of process.[6]

### Motion for Default Judgment.

 The Court now turns to plaintiffs' motion for default judgment, which as stated above seeks judgment of $148,765.78 for delinquent fund contributions, liquidated damages, interest, attorneys' fees, accounting fees and costs. The motion is supported by the affidavit of an accountant whose firm performed the audit of defendants' records, a copy of the audit report itself, and the affidavit of plaintiffs' counsel with respect to the issue of attorneys' fees.

The Court finds that the affidavit of defendant Walton raises questions of fact concerning the accuracy of some aspects of plaintiffs' audit. Accordingly, plaintiffs' motion for default judgment will be denied, and the parties will be ordered to appear before the Court to obtain a prompt trial date on the issue of damages in this matter. The parties should also consider whether reference to alternative dispute resolution would be beneficial.

### Conclusion.

For the foregoing reasons, defendants Little and Walton's motion to set aside the entry of default will be denied for failure to show good cause under Rule 55(c), Fed.R.Civ.P. Plaintiffs' motion for default judgment will also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Larry T. Little and Brenda Walton's motion to set aside entry of default and for other relief is **DENIED**. [Doc. 19]

**IT IS FURTHER ORDERED** that plaintiffs' motion for default judgment is **DENIED**. [Doc. 16]

**IT IS FURTHER ORDERED** that counsel for the parties shall appear together before the Court at informal matters on or before October 8, 1998, to set a date for trial on the issue of damages in this matter and to report whether reference to alternative dispute resolution is desired.

---

6. Because defendants have failed to show good cause, the Court need not address the issues of a meritorious defense and prejudice to the plaintiffs. Nonetheless, the Court agrees with plaintiffs that defendants have not shown the existence of a meritorious defense to liability, but rather only raise issues which go to the amount of damages. Plaintiffs have presented substantial evidence to show that both defendants carried on the business of Structural Restorations after the corporation was dissolved. Finally, the Court agrees that plaintiffs would be prejudiced if the entry of default is set aside because of the possibility of dissipation of any remaining assets.