**In re ROY GOODEN PLUMBING & SEWER CO., INC., Debtor.**

**Bankruptcy No. 90–44729–172.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

July 14, 1993.

Milton P. Goldfarb, Robert Margulus, Clayton, MO, for debtor.

Steven LaBounty, Dist. Counsel, IRS.

Garry Seltzer, Clayton, MO, for Milford Supply Co.

Richard P. Perkins, St. Louis, MO, for the Plumbers Funds.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

The matter before the Court is the motion of Milford Supply Company ("Milford") for allowance and payment of an administrative expense claim and the objections thereto. The facts are essentially undisputed.

The Debtor, Roy Gooden Plumbing and Sewer Company, Incorporated, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 28, 1990. By an Order entered on November 12, 1991, the Debtor's Second Amended Plan of Reorganization was confirmed by the Court. On December 2, 1992, after the Debtor was unable to make payments under the confirmed plan, an Order was entered which granted a motion of the Internal Revenue Service, and converted the case to a liquidating case under Chapter 7.[1]

Between June 30, 1992 and October 31, 1992, a period after confirmation of the plan but before conversion to Chapter 7, Milford sold and delivered $31,899.49 worth of construction materials to the Reorganized Debtor on an open account. Milford has not received payment for these materials. Milford contends that "such sales are administrative expenses within the meaning of 11 U.S.C. § 503(b) and 507(b)." *Motion For Allowance And Payment Of Administrative Claim*, document number 151, filed by Milford on February 18, 1993. For purposes of this determination, the Court has not limited its consideration to subsection (b) of Section 507. The motion papers included documentation to support the amounts owed.

The United States Internal Revenue Service filed a response in opposition to Milford's motion. A joint objection to the motion was also filed on behalf of the Greater St. Louis Construction Laborers Welfare Fund; the Construction Laborers Pension Trust of Greater St. Louis; AGC—Eastern Missouri Laborers Joint Training Fund

---

1. No party has questioned a Bankruptcy Court's authority to convert a postconfirmation case originally filed under Chapter 11 to a case under Chapter 7 if the file has not been closed by the Clerk of Court. Such authority may be found at 11 U.S.C. §§ 1112(a), or (b)(2), (7), (8), (9) or (10). If the file has been closed, the most practical means of obtaining a Chapter 7 Order For Relief appears to be the filing of a petition to initiate a new case.

("Laborers Funds"); Plumbers' Pension Trust for Members and Apprentices of St. Louis Journeymen Plumbers Local Union No. 35, A.F. of L.; Plumbers' Vacation and Holiday Trust Funds for Members and Apprentices of St. Louis Journeymen Plumbers, Local No. 35, AFL–CIO; Plumbers Educational Fund ("Plumbers Funds"); and the Plumbing Industry Council. These parties appeared before the Court by their respective Counsel on April 6, 1993, and presented oral arguments in this matter. Thereafter, the Court entered an order granting the parties additional time to file memorandum of law. Milford filed its suggestions in support of the motion on April 22, 1993. The Internal Revenue Service filed its memorandum of law in opposition to the motion on April 30, 1993. A memorandum in opposition to the Milford motion was also filed on behalf of the Laborers Funds, the Plumbers Funds and the Plumbing Industry Council on April 30, 1993.

On April 8, 1993, the Chapter 7 Trustee filed a report of no distribution.

## ADMINISTRATIVE EXPENSE

■ The issue presented here is whether the postconfirmation, preconversion claim of a creditor is entitled to be allowed as a priority administrative expense in a superseding Chapter 7 case.

■ Pursuant to Section 503(b)(1)(A) a claim may be allowed as an administrative expense if it is for "the actual, necessary costs and expenses of preserving the estate". Such allowed administrative expenses are accorded a first priority in the distribution scheme pursuant to Section 507(a)(1). The commencement of a case under Title 11 of the United States Code creates a bankruptcy estate pursuant to 11 U.S.C. § 541(a). Confirmation of a plan of reorganization under Chapter 11 of Title 11 ends the life of the Chapter 11 bankruptcy estate. *See Bankruptcy Law Manual*, Weintraub & Resnick, ¶ 8.23[5], pp. 8–79 and 8–80 (1980). The Chapter 11 bankruptcy estate does not exist after confirmation even though the bankruptcy file may remain open in the Bankruptcy Court, and even though the Bankruptcy Court retains jurisdiction in the matter. *In re Tri–L Corp.*, 65 B.R. 774, 778 (Bankr.D.Utah 1986).

■ Except as otherwise provided in the plan or in the order confirming the plan, confirmation of a Chapter 11 plan of reorganization vests all of the property of the bankruptcy estate in the postconfirmation debtor pursuant to 11 U.S.C. § 1141(b); and upon confirmation the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor pursuant to 11 U.S.C. § 1141(c). Therefore, the estate of the debtor in possession, and the administration of the estate of the debtor in possession end upon confirmation of a plan. In one sense, the Reorganized Debtor operates as a new entity, free of its preconfirmation obligations except as may have been provided for in the confirmed plan. There is no longer an estate to be preserved as anticipated at Section 503(b)(1)(A). Therefore, at law, debts incurred by a Reorganized Debtor under a confirmed plan of reorganization are not entitled to allowance and payment in a superseding Chapter 7 case as an administrative expense priority.

■ In support of its contention that such debts should be allowed as administrative expenses, Milford relies on the Bankruptcy Court opinion in *Matter of Davison*, 79 B.R. 855 (Bankr.W.D.Mo.1987). In *Davison*, the Court granted an administrative expense priority to the holder of a debt that was incurred in part, after confirmation of the Davisons' plan. Recognizing that the weight of authority would not allow an administrative expense for the portion of the debt that arose postconfirmation, the *Davison* Court found that the existence of exceptional circumstances required the application of equitable principles to prevent "a great crippling of the potential for reorganization of entities in future cases under the general rule" established by the earlier decisional authority. *Id.* at 858–859. It is likely that the precise situation presented to the *Davison* Court will never reappear, and that therefore, entities extending postconfirmation credit

to a Reorganized Debtor should not rely on the *Davison* result.

To the extent that the Milford claim is denied priority status in the matter being considered here, this Court must disagree with the argument that a portion of the *Davison* decision is binding precedent for the principle that a bankruptcy estate exists after confirmation of a Chapter 11 plan of reorganization.

Thus, it is impossible to classify taxes or rents that accrue postconfirmation as administrative expenses [of the estate] for the simple reason that after confirmation there is no longer an estate to administer.

*In re Frank Meador Buick*, 65 B.R. 200, 203 (W.D.Va.1986) (citing *United States v. Redmond*, 36 B.R. 932, 934 (D.Kan.1984), aff'g *In re Westholt Mfg., Inc.*, 20 B.R. 368 (Bankr.D.Kan.1982)).

Therefore, in this superseding Chapter 7 case, the postconfirmation, preconversion claim of Milford Supply Company is not entitled to be allowed and paid as a priority expense of administration.

## GENERAL CLAIM

In view of the circumstances presented in this matter the Court must consider, but need not decide, the next question concerning the possibility of other "special" treatment that might be available to a postconfirmation, preconversion debt such as that held by Milford.[2] Pursuant to Section 348(d), a claim against the estate of the debtor that arises after the Chapter 11 order for relief, but before conversion of the case, is treated as if such claim has arisen immediately before the date of filing of the Chapter 11 petition. As noted above, there is no postconfirmation estate of the debtor in a Chapter 11 case. Thus, it might be argued that Section 348(d) does not apply to a debt of a Reorganized Debtor.

However, it might also be argued that the drafters of Section 348(d) did not intend to make a distinction between preconfirmation and postconfirmation Chapter 11 debt, but rather intended to include all debt incurred after filing but before conversion, whether preconfirmation or postconfirmation. However, this argument may create an unintended distinction among postconfirmation creditors.

If, for example, a postconfirmation bankruptcy case is closed, and at some later time the Reorganized Debtor becomes a debtor in a new Chapter 7 case, Section 348(d) would appear to be inapplicable to any of the postconfirmation debts, because there is no conversion of the case. Therefore, this debt would not be treated as though it had arisen immediately before the date of the filing of the original Chapter 11 petition. A valid reason for this apparent distinction is not readily apparent. This question was not argued by the parties in this matter, and it is sufficient for the Court to determine that the Milford claim is a general unsecured claim in the Chapter 7 case.

**IT IS ORDERED** that this hearing is concluded; and that the motion of Milford Supply Company for allowance and payment of an administrative claim for postconfirmation, preconversion debt of a Reorganized Debtor is denied; and that said claim is allowed as a postconfirmation, preconversion general unsecured claim.

---

2. The Utah Bankruptcy Court reasoned that postconfirmation debtor's attorneys fees are not governed by Sections 503(b)(1)(A) and (B), but rather by Section 503(b)(2) if awarded under Section 330(a). Therefore, such fees may be entitled to an administrative expense priority in the superseding Chapter 7 case. *In re Tri–L Corp.*, 65 B.R. 774, 777 (Bankr.D.Utah 1986).